# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### NO. 19-2390

---

### JAMES DENNIS,
**Appellee**

### V.

### CITY OF PHILADELPHIA,
### FRANK JASTRZEMBSKI, and
### MANUEL SANTIAGO,
**Appellants**

---

## APPEAL BY DEFENDANTS FROM MAY 15, 2019 ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, EDUARDO ROBRENO, J., NO. 18-CV-2689, DENYING DEFENDANTS' MOTION TO DISMISS

---

## BRIEF FOR APPELLEE

---

Paul Messing
David Rudovsky
Kairys, Rudovsky, Messing,
  Feinberg & Lin, LLP
718 Arch Street, Suite 501S
Philadelphia, Pennsylvania 19106
(215) 925-4400

*Counsel for Appellee*

# TABLE OF CONTENTS

TABLE OF CITATIONS ........................................................................ iii

COUNTER-STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ............................................................................1

COUNTER-STATEMENT OF ISSUES PRESENTED ...........................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS .............................3

COUNTER-STATEMENT OF THE CASE ...........................................................4

I.     Procedural History ........................................................................4

II.    Statement of Relevant Facts ..........................................................5

       A.    Mr. Dennis's Legal Claims ..................................................5

       B.    The Murder ..........................................................................7

       C.    The Eyewitnesses .................................................................8

       D.    The Police Investigation ......................................................9

             1.    Improper Identification Procedures ...........................9

             2.    Concealment of Critical Witness Information ..........10

             3.    Concealment of Witness William Frazier .................11

             4.    Coercion of Witness Charles Thompson and Concealment of Unlawful Interview Tactics ...............11

             5.    Concealment of the Cason Receipt ...........................12

             6.    Concealment of Activity Sheets ...............................13

             7.    Fabrication of Clothing Evidence ............................14

       E.    The Trial ..............................................................................15

       F.    Post-Trial Proceedings .......................................................18

STANDARD OF REVIEW ..................................................... 19

SUMMARY OF ARGUMENT ............................................... 20

ARGUMENT.................................................................... 21

I.    The Defendant Detectives Violated Mr. Dennis's Clearly Established Right to Due Processof Law Under the Fourteenth Amendment, and, Therefore, They are not Entitled to Qualified Immunity.............................................. 22

        A.    The Defendant Detectives Have Waived the Argument that the Fourth Amendment Controls this Case....................................... 23

        B.    The Complaint Alleges Clearly Established Due Process Clause Violations. ........................................................................... 25

II.   The Issue of Whether *Heck v. Humphrey* Bars this Action is not Within the Court's Jurisdiction; Alternatively, on the Merits, *Heck* Provides no Grounds for Dismissal as the Constitutional Claims Accrued at the Time of the Grant of Habeas Relief. ........................................... 33

CONCLUSION ................................................................. 42

**TABLE OF CITATIONS**

**Cases**

*Air Courier Conference of Am. v. Am. Postal Workers Union*,
   498 U.S. 517 (1991) ........................................................................... 25

*Allman v. Smith*, 790 F.3d 762 (7th Cir. 2015) ....................................... 33

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) ......................... 26, 29, 32

*Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) .......................................... 25

*Black v. Montgomery Cty.*, 835 F.3d 358 (3d Cir. 2016) ................... 26, 28

*Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) ............................ 26

*Commonwealth v. Dennis*, 17 A.3d 297 (Pa. 2011) ............................... 18

*Commonwealth v. Dennis*, 715 A.2d 404 (Pa. 1998) ............................. 17

*Cormier v. Lafayette City-Par Consol. Gov't*, 493 Fed. App'x 578
   (5th Cir. 2012) ............................................................................... 36

*Curry v. Yachera*, 835 F.3d 373 (3d Cir. 2016) .................................... 40

*Davenport v. Borough of Homestead*, 870 F.3d 273 (3d Cir. 2017) ....... 28

*Delade v. Cargan*, No. 19-1908, 2020 WL 5001788
   (3d Cir. Aug. 25, 2020) .............................................................. 27, 28

*Dennis v. Sec'y Pa. Dept. of Corr.*, 834 F.3d 263 (3d Cir. 2016) (*en banc*) ........ 5, 18

*Dennis v. Wetzel*, 777 F.3d 642 (3d Cir. 2015) ..................................... 18

*Dennis v. Wetzel*, 966 F. Supp. 2d 489 (E.D. Pa. 2013) ........................ 18

*Donahue v. Gavin*, 280 F.3d 371 (3d Cir. 2002) ...................................................26

*Drumgold v. Callahan*, 707 F.3d 28 (1st Cir. 2013) ...............................................31

*Eberhardinger v. City of York*, 782 Fed. App'x 180 (3d Cir. 2019).......................36

*Estate of Ceballas v. Husk*, 919 F.3d 1204 (10th Cir. 2019)...............................33

*Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998) ...................................38

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005).........................................................40

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011) ................................. 28, 30, 31

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014)..............................................passim

*Heck v. Humphrey*, 512 U.S. 477 (1994)........................................................passim

*Hicks v. Ferreyra*, 965 F.3d 302 (4th Cir. 2020) .............................................24, 25

*Hormel v. Helvering*, 312 U.S. 552 (1941)............................................................23

*In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010) .....................24

*Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014)..............................................35, 38

*James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012) .................................19

*Kontrick v. Ryan*, 540 U.S. 443 (2004) .................................................................25

*Lucier v. City of Ecorse*, 601 Fed. App'x 372 (6th Cir. 2015) ...............................36

*Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164
    (3d Cir. 2016) .....................................................................................................21

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ...............................................passim

*McAdam v. Warmuskerken*, 517 Fed App'x 437 (6th Cir. 2013) ...........................37

*McDonough v. Smith,* 139 S. Ct. 2149 (2019) .................................................. 38, 40

*Miller v. Pate*, 386 U.S. 1 (1967) ........................................................ 20

*Miller v. Riser*, 84 Fed. App'x 417 (5th Cir. 2003) ................................ 37

*Mooney v. Holohan,* 294 U.S. 103 (1935) .......................................... 20, 26, 28, 31

*Olsen v. Correiro*, 189 F.3d 52 (1st Cir. 1999) ...................................... 6, 35, 38

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) .............................. 32

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) .............................. 7, 35

*Pyle v. Kansas,* 317 U.S. 213 (1942) ...................................................... 26, 32

*Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) .................................... 39

*Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011) .................................... 26

*E.D. v. Sharkey,* 928 F.3d 299 (3d Cir. 2019) ........................................ 19

*Siehl v. City of Johnstown*, 365 F. Supp. 3d 587 (W.D. Pa. 2019) ......................... 31

*Singleton v. Wulff*, 428 U.S. 106 (1976) ................................................ 23

*Smith v. Gonzales*, 222 F. 3d 1220 (10th Cir. 2000) .................................. 36, 39, 40

*Soldal v. Cook Cty.,* 506 U.S. 56 (1992) ................................................ 30

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999) .............................. 32

*Swint v. Chambers Cty. Comm'n*, 514 U.S. 35 (1995) ............................... 33

*United States v. Agurs*, 427 U.S. 97 (1976) .......................................... 32

*United States v. Dupree,* 617 F.3d 724 (3d Cir. 2010) .............................. 24

*United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993) ...............30

*Villarosa v. N. Coventry Twp.*, 711 Fed. App'x 92 (3d Cir. 2017)..........................27

*Williams v. Sec'y Pennsylvania Dep't of Corr.,* 848 F.3d 549 (3d Cir. 2017)...........6

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ......................................................29

**Statutes and Rules**

28 U.S.C. § 1291.....................................................................................................1

28 U.S.C. § 1292(b) ................................................................................................4

28 U.S.C. § 1331.....................................................................................................1

28 U.S.C. § 1343.....................................................................................................1

28 U.S.C. § 1367.....................................................................................................1

42 U.S.C. § 1983.....................................................................................................4

Fed. R. Civ. P. 12(b)(6)..........................................................................................4

## COUNTER-STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343 and 1367 to hear this case asserting claims for violations of the Fourteenth Amendment of the United States Constitution.

Appellants contend that this Court has appellate jurisdiction as to all issues raised in their brief under 28 U.S.C. § 1291 and the collateral order doctrine because the appeal relates to the denial of qualified immunity. As outlined below, *see infra* Argument § II, appellee James Dennis asserts that there is no jurisdiction over appellants' contentions that this action is barred by *Heck v. Humphrey* and that Mr. Dennis's claims have not accrued.

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.      Whether the district court properly denied appellants' motion to dismiss on qualified immunity grounds as the Complaint plausibly alleges violations of clearly established rights under the Fourteenth Amendment.

2.      Whether in an interlocutory appeal from the denial of qualified immunity the Court should decline to exercise jurisdiction over separate and unrelated contentions that the action is barred by *Heck v. Humphrey*, and, in the event the Court reaches the issue, whether the district court properly found that neither *Heck v. Humphrey* nor the claim-accrual doctrine bar this action.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

To the knowledge of appellee James Dennis, there are no cases or proceedings related to the instant appeal that are pending or are about to be presented before this Court or any other court or agency, state or federal.

# COUNTER-STATEMENT OF THE CASE

## I.     Procedural History

Plaintiff-Appellee James Dennis brought this action under 42 U.S.C. § 1983 asserting claims of fabrication of evidence and deliberate deception under the Fourteenth Amendment.  Defendants-Appellants Jastrzembski and Santiago ("defendant detectives"), together with defendant City of Philadelphia, moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6).  The defendant detectives asserted that they could not be held liable for their misconduct based on qualified immunity and, further, that Mr. Dennis's action is barred by *Heck v. Humphrey*.

On May 15, 2019, the district court issued an Order and Opinion denying the motion. App. 1-35.  On June 14, 2019, the defendant detectives filed a Notice of Appeal on the qualified immunity issue.[1] App. 36.  On June 21, 2019, the appeal was listed for possible dismissal due to jurisdictional defect.  On June 24, 2019, Mr. Dennis filed a Motion to Dismiss the interlocutory appeal.  On July 9, 2020, the Court entered an Order referring that motion to the merits panel.

---

[1] Separately, on June 24, 2019, all defendants filed a Motion to Certify Under 28 U.S.C. § 1292(b), seeking leave to appeal all aspects of the Court's ruling on the motion to dismiss.  On July 1, 2019, the district court denied the certification motion.

## II.     Statement of Relevant Facts

### A.     Mr. Dennis's Legal Claims

To place the relevant facts in context, we first provide a brief summary of the legal claims asserted in Plaintiff-Appellee James Dennis's Complaint.  In 1992, Mr. Dennis was wrongfully convicted and sentenced to death for a murder he did not commit.  Nearly twenty-five years later, this Court, sitting *en banc*, vacated the conviction, finding that constitutional violations by police detectives undermined the fairness of Mr. Dennis's trial and the validity of the jury's verdict.  *Dennis v. Sec'y Pa. Dept. of Corr.*, 834 F.3d 263 (3d Cir. 2016).  After the case was remanded to state court, Mr. Dennis was offered the choice of awaiting a new trial—while remaining in custody for up to two or more years—or entering a *nolo contendere* plea to reduced charges for a sentence of imprisonment less than the time he had already spent in custody.  Mr. Dennis, while asserting his innocence, chose to regain his freedom by entering a *nolo contendere* plea to reduced charges on December 23, 2016.

As a result of that plea, Mr. Dennis cannot bring an action for unlawful arrest or malicious prosecution, but he may seek redress under the Fourteenth Amendment for the violations of his rights to due process of law and a fair trial that

led to the wrongful 1992 capital conviction. The 1992 trial and conviction caused compensable harms under the Fourteenth Amendment in three discrete ways.

First, Mr. Dennis was subjected to a three-week trial that resulted in a sentence of death. As that punishment was fully reversed, he has a claim for the emotional harm caused by these capital proceedings, as well as the threat of execution that existed over the next 25 years, including the issuance of two death warrants and the scheduling of multiple execution dates. *See Olsen v. Correiro*, 189 F.3d 52, 70-71 (1st Cir. 1999) (finding that jury could award "substantial compensatory damages for injuries associated with the murder trial and conviction," even though damages could not be awarded for the entirety of the prison sentence flowing from that conviction).

Second, Mr. Dennis served his entire sentence on death row, in solitary confinement, under extraordinarily restrictive and, at times, inhumane conditions. *See Williams v. Sec'y Pennsylvania Dep't of Corr.,* 848 F.3d 549, 566-69 (3d Cir. 2017) (discussing "robust body of scientific research on the effects of solitary confinement" and emphasizing "isolating conditions that…cause deep and long-term psychic harm"). These harms resulted solely from the 1992 capital conviction, and the *nolo contendere* plea to a non-capital, third-degree murder offense would not be called into question by a judgment for Mr. Dennis.

Third, Mr. Dennis is entitled to compensation for at least a portion of the 25 years he spent in custody from 1991-2016. In 2016, as a result of his *nolo contendere* plea, Mr. Dennis was given a prison sentence of 12 ½ to 25 years. If Mr. Dennis had received that sentence in 1992, he would have been eligible for parole after 12 ½ years. Further, under Pennsylvania law as it existed in 1992, defendants who entered guilty or *nolo contendere* pleas to third degree murder faced a maximum prison sentence no greater than the sentence imposed on Mr. Dennis in 2016. Additionally, such defendants were typically paroled long before the expiration the maximum sentence. Mr. Dennis, therefore, may seek damages for the period of time he was incarcerated beyond the time for which he would have been incarcerated had he entered the *nolo contendere* plea in 1992, including compensation for lost liberty, lost earnings, and pain and suffering. *See, e.g., Poventud v. City of New York*, 750 F.3d 121, 137 (2d Cir. 2014) (allowing § 1983 claim for damages for time spent in prison because plaintiff's claim "excludes the time that he served pursuant to his unchallenged…guilty plea").

## B.     The Murder

Mr. Dennis's unlawful capital conviction arose out of the October 22, 1991, murder of Chedell Williams. On that date, Ms. Williams left school in Philadelphia with her classmate Zahra Howard. Both women wore gold earrings. At a local

train station, two men attempted to rob Ms. Williams who, during a struggle, was fatally wounded by a single gunshot. The men ran to a vehicle where an accomplice drove them from the scene. App. 45 (Complaint ¶¶ 8-9).[2]

C.     The Eyewitnesses

Ms. Howard and dozens of bystanders witnessed the incident; only nine provided descriptions of the assailants. A squad of detectives was assigned to the case, led by defendant Jastrzembski with defendant Santiago assisting. The defendant detectives and other police officers and detectives took statements from the nine witnesses. Although the witnesses' descriptions differed in minor details, they were consistent as to weight and height estimates of the shooter: 170 to 180 pounds, and 5'9" to 5'10"—about the same height as the victim. The witnesses also described the shooter as being in his late teens to early twenties, with a dark complexion, and wearing a red sweat suit. App. 46-48 (¶¶ 11-18).

The witnesses who gave descriptions had very limited opportunities to observe the perpetrators, and only three testified at trial: Zahra Howard, James Cameron, and Thomas Bertha. While three men were described as participating in the crime, only one man would ever be arrested – James Dennis, who at 5'4" tall (a

_____

[2] The Appendix ("App.") is cited by page, and references to the Complaint are cited by paragraph ("¶").

half-foot shorter than the victim), 125 pounds, and with a medium complexion, by a large margin did not match the descriptions of *any* of the perpetrators. *Id.*

### D.     The Police Investigation

The crime became the centerpiece of growing community concern over a series of robberies of teenagers for expensive jewelry or clothes. App. 48 (¶ 20). An array of leads resulted in no arrests, and extensive media coverage intensified the pressure on police to solve the murder.  In turn, the police conducted a deeply flawed investigation, which gave rise to the constitutional violations asserted in this case.

#### 1.     Improper Identification Procedures

With no solid leads, police pursued unsubstantiated, second-hand, and anonymous tips – among them, a rumor that "Jimmy from the projects" may have been involved. App. 48 (¶ 21).  Despite obvious inconsistencies between "Jimmy from the projects" and eyewitness descriptions of the perpetrators, and despite the unreliability of the street rumors and any evidence connecting James Dennis to this crime, the defendant detectives zeroed in on Mr. Dennis as the prime suspect.

Initially, they showed a photo array to eyewitnesses with Mr. Dennis's photo suggestively placed in the first position of six photos.  App. 48-49 (¶¶ 21-24). Howard, Cameron, and Bertha offered only qualified and uncertain "identifications"

of Mr. Dennis. Additional suggestive identification procedures led to tainted identification testimony at trial. App. 49-50 (¶¶ 25-31). *See infra* § II.E.

### 2. Concealment of Critical Witness Information

When a pre-trial lineup was scheduled, Mr. Dennis's counsel requested that all eyewitnesses be present, but only four of the nine eyewitnesses to the murder were produced. At the preliminary hearing, trial counsel again requested that any additional murder eyewitnesses attend a lineup, but no other lineup was conducted. App. 57-58 (¶¶ 50-52). The three eyewitnesses mentioned above who had tentatively selected Mr. Dennis from a photo array (Howard, Cameron, and Bertha) became somewhat more certain upon seeing him at the line-up. *Id.* The fourth witness, Anthony Overstreet, did not identify Mr. Dennis, but, instead, identified another person in the lineup. Neither the Commonwealth nor trial counsel would call Overstreet at trial. App. 57-58 (¶ 52).

Critically, the defendant detectives were aware of another witness, George Ritchie. He had told police he was "sure" he could identify the shooter. But, when the defendant detectives showed Ritchie a photo array including Mr. Dennis's photo, he did not identify anyone in the array as a shooter. Nor was Ritchie brought to the lineup. The defendant detectives concealed these critical exculpatory facts from Mr. Dennis and his counsel. App. 58 (¶¶ 53-55).

### 3. Concealment of Witness William Frazier

As the investigation progressed, the defendant detectives learned facts that undermined the case against Mr. Dennis and which, as detailed in the Complaint, called into question the credibility of prosecution witnesses, including Howard. App. 50-52 (¶¶ 32-34, 39). In particular, the defendant detectives received information that William Frazier, an inmate in the Montgomery County Correctional Facility, had spoken with others who admitted their involvement in the murder. This information was concealed from Mr. Dennis until a decade after his trial, when he received the information in PCRA discovery. App. 51-53 (¶¶ 36-38).

### 4. Coercion of Witness Charles Thompson and Concealment of Unlawful Interview Tactics

Police arrested Charles Thompson, who knew Mr. Dennis through a singing group in which they both participated, for an assault of his pregnant girlfriend. The defendant detectives used coercion and threats of violence to pressure Thompson into falsely implicating Mr. Dennis in the Williams murder. As a result of the defendant detectives' tactics, Thompson signed a statement asserting that he had seen Mr. Dennis with a gun on the day of the murder and that Mr. Dennis had confessed to him. In return, Thompson expected leniency on the felony assault charge, App. 53-54, 63 (¶¶ 40, 76-77), and six months prior to Mr. Dennis's trial, the prosecution dropped that charge. Throughout, the defendant detectives

concealed the fact that they had obtained the statement from Thompson through coercion. After trial, Thompson told defense investigators that he regretted his false statement and that he had attempted to recant it on the eve of trial but was told by a prosecutor that it was too late. App. 54 (¶ 41).

### 5. Concealment of the Cason Receipt

After his arrest, Mr. Dennis gave a statement to the defendant detectives in which he informed them that he was innocent and provided information that would show he was nowhere near the location of the murder at the time it occurred (1:50 p.m.). To support this alibi, Mr. Dennis provided the name of an acquaintance, Latanya Cason, who he had seen at that time at a bus stop a considerable distance from the crime scene. The defendant detectives later interviewed Cason, who confirmed that she had seen Mr. Dennis on the day of the murder. But Cason estimated that her encounter with Mr. Dennis had been at 4:00-4:30 p.m., two hours after the time Mr. Dennis had described seeing her. The time difference meant that Cason's statement did not support Mr. Dennis's alibi. App. 55-57 (¶¶ 47-49).

In an interview after trial, Cason revealed that when the defendant detectives interviewed her, they took with them her copy of a welfare receipt from the day of the shooting. She thought the receipt was time-stamped 3:03 p.m. Cason recalled that she had seen Mr. Dennis after cashing her welfare check and thus used her

recollection of the receipt to estimate when she would have seen Mr. Dennis. App. 56-57 (¶¶ 48-49).

On direct appeal, counsel obtained a copy of the receipt which showed a military-style time stamp of 13:03, or 1:03 p.m. App. 55-57 (¶¶ 47-49). Ms. Cason had either misread or misremembered the receipt. The defendant detectives knew that but withheld the receipt from Mr. Dennis and his counsel. Had Cason's faulty recollection been corrected—as trial counsel would have done had the receipt been available—her alibi testimony at trial would have been compelling as it would have placed Mr. Dennis at a location far from the shooting at the time it occurred. Mr. Dennis was, however, deprived of this testimony due to the defendant detectives, who never corrected Cason's mistake, concealed the existence of the receipt, and allowed Mr. Dennis to face conviction and execution as a result. App. 55-57, 60 (¶¶ 47-49, 65).

### 6. Concealment of Activity Sheets

Two days after the murder, the defendant detectives learned that Zahra Howard—who had given a written statement in which she said the perpetrators were strangers—told relatives that she recognized the perpetrators from her high school. Mr. Dennis had never attended that high school. Further, the defendant detectives' "activity sheets" (documents used to provide a running log of the

13

investigation) contained information that Howard had "set up" Williams, that the getaway car had been following Williams and her friends for a week before the shooting, and that other suspects may have been involved in an earlier robbery of the victim's earrings. That information was inconsistent with Howard's initial statement to the police and her trial testimony. Critically, the information was relevant to show that Howard, who was one of the prosecution's key witnesses at trial, had reason to falsely implicate another person, like Mr. Dennis. The defendant detectives were aware of this essential impeachment evidence but they concealed it for more than a decade. App. 50-53, 58-59, 63 (¶¶ 32-34, 38-39, 54-57, 75-76).

### 7. Fabrication of Clothing Evidence

Detective Jastrzembski executed search warrants that sought clothing similar to that described by eyewitnesses, as well as guns, ammunition, and the stolen earrings. Jastrzembski falsely claimed to have seized a red sweatshirt in Mr. Dennis's size that matched the description of the clothing worn by the man who shot Ms. Williams, and he testified to these facts at trial. App. 55, 61 (¶¶ 44-45, 66-67). Jastrzembski claimed that he bagged and removed the clothing and took it to police headquarters, but that this evidence somehow "disappeared." App. 55 (¶ 46).

As alleged in the Complaint, Jastrzembski's claim was a fabrication, and he never made any such seizure.

### E.    The Trial

At trial, the prosecution called as identification witnesses Bertha, Cameron, and Howard.  Bertha and Cameron identified Mr. Dennis, as did Howard, who reiterated on cross-examination that she had never seen the perpetrators before the day of the shooting.  App. 60 (¶¶ 61-62).  With Mr. Dennis and his counsel deprived of impeachment evidence concerning Howard's prior knowledge of the robbery, this testimony went unchallenged.  Nor, due to the defendant detectives' concealment, did the jury learn about the fact that two other eyewitnesses, George Ritchie (described above) and David Leroy (who had described the shooter as 5'10") did not pick Mr. Dennis from the photo array.  The jury was, likewise, deprived of testimony concerning Overstreet's identification of someone other than Mr. Dennis in the lineup. *Id.* (¶ 63).

Thompson testified that he saw Mr. Dennis with a gun on the day of the murder.  Neither trial counsel nor the prosecutor had been told that the defendant officers had used coercion and threats to force Thompson to falsely implicate Mr. Dennis, leaving the defense no means to challenge the testimony. *Id.* (¶ 64).

Latanya Cason was called by *the prosecution* and stated that she saw Mr. Dennis two hours later than Mr. Dennis had reported in his statement to police. Cason asserted that her time frame was only an estimate, but that based on when she had completed her errands that day, she could not have seen Mr. Dennis between 1:30 and 2:30 p.m., when the murder occurred and when Mr. Dennis told police he was with Cason, far from the scene of the crime. With no knowledge of the time-stamped receipt that would have corrected Cason's testimony and supported Mr. Dennis's testimony, trial counsel had no basis to challenge or impeach Cason. App. 60 (¶ 65).

Detective Jastrzembski testified about the clothing he falsely claimed he recovered in Mr. Dennis's home. Jastrzembski's testimony embellished details about the clothing that were not reported anywhere in police paperwork. Thus, he testified that the seized clothing "fit the description" of the clothing worn by the perpetrator, even though the detective's initial paperwork included only vague and generic descriptions of those items. App. 61 (¶ 66). Further, he testified that the clothes "were the size of the defendant" even though none of the documentation provided details on sizing. App. 60-61 (¶¶ 65-67. In fact, there was no physical evidence seized by the police that implicated Mr. Dennis in this crime.

Denied critical information by the detectives' persistent concealment and fabrication of evidence, the case for the defense was limited. In support of Mr. Dennis's account, trial counsel called Mr. Dennis's father to testify to the time he saw Mr. Dennis get on a bus on the day of the shooting. Mr. Dennis testified that he was nowhere near the scene of the murder when it occurred. When the prosecutor confronted him with Cason's testimony, Mr. Dennis, having no knowledge of the receipt showing Cason's flawed time estimate, was deprived of the means to effectively respond. App. 61-62 (¶ 68).

As a result of the defendant detectives' fabrications and concealment of exculpatory and impeachment evidence, the defense was unable to show the following: the Cason receipt independently corroborated the alibi defense; the activity sheets impeached the credibility of the prosecution's key identification witness, Zahra Howard; the incriminating clothing had not been seized from Mr. Dennis's residence; Thompson had been coerced into stating that he had seen Mr. Dennis with a gun; the only eyewitness, George Ritchie, who was "sure" he could identify the shooter, had not identified Mr. Dennis; and Frazier had reported that others had confessed to the murder. App. 63-64 (¶¶ 75-80).

The jury returned a verdict of guilty on first-degree murder and related offenses and imposed a sentence of death. App. 62 (¶69).

## F. Post-Trial Proceedings

On direct appeal, the Supreme Court of Pennsylvania affirmed Mr. Dennis's conviction and death sentence. *Commonwealth v. Dennis*, 715 A.2d 404 (Pa. 1998). Mr. Dennis challenged his conviction and sentence under Pennsylvania's Post Conviction Relief Act, and, after nearly eight years of litigation, the Supreme Court of Pennsylvania denied relief. *Commonwealth v. Dennis*, 17 A.3d 297 (Pa. 2011).

On August 21, 2013, the Honorable Anita B. Brody granted Mr. Dennis's Petition for Writ of Habeas Corpus. *Dennis v. Wetzel*, 966 F. Supp. 2d 489 (E.D. Pa. 2013). On February 9, 2015, a panel of this Court reversed that decision, *Dennis v. Wetzel*, 777 F.3d 642 (3d Cir. 2015), but, on August 23, 2016, this Court, on *en banc* review, affirmed the district court's grant of *habeas* relief and the case was remanded to state court for a new trial. *Dennis v. Sec'y Pa. Dept. of Corr.*, 834 F.3d 263 (3d Cir. 2016) (*en banc*).

On remand for a new trial, as noted, Mr. Dennis was confronted with two options: either remain in custody for up to two or more years while awaiting a new trial, or enter a *nolo contendere* plea to a reduced charge for a sentence of less prison time than he had already served. On December 23, 2016, Mr. Dennis, while continuing to assert his innocence, entered a *nolo contendere* plea to third degree murder and was sentenced to 12 ½ to 25 years. App. 62-63 (¶¶ 72-73).

## STANDARD OF REVIEW

This Court exercises plenary review over all of the legal issues presented by this appeal, including the issue of qualified immunity. *See E.D. v. Sharkey,* 928 F.3d 299, 305 (3d Cir. 2019). The Court applies the same standard that district courts apply at the motion to dismiss stage, and review is limited to the contents of the Complaint and any attached exhibits, and to arguments made in the district court. *Id.* at 310 n.5; *Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014). The Court must accept as true the allegations contained in the Complaint. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

## SUMMARY OF ARGUMENT

1.      The Fourteenth Amendment Due Process right to be free from the deliberate concealment of evidence has been clearly established since *Mooney v. Holohan,* 294 U.S. 103, 112 (1935), and the ban on the fabrication of evidence has been clearly established since *Miller v. Pate*, 386 U.S. 1 (1967). No objectively reasonable officer could have believed that it was lawful in 1992 to plant, fabricate, or conceal evidence. The argument that these claims must be brought under the Fourth Amendment is waived, as the defendant detectives never made that argument in the district court. In any event, on the merits, the claims are properly brought under the Fourteenth Amendment, and the assertion by the defendant detectives that these claims are in effect non-actionable under the *Brady v. Maryland* doctrine is legally frivolous.

2.      The defendant detectives' arguments regarding the *Heck v. Humphrey* bar and claim accrual are not inextricably connected to the core qualified immunity issue, and, therefore, there is no jurisdiction in this Court for interlocutory review of those issues. If the Court were to consider the *Heck v. Humphrey* argument on the merits, Mr. Dennis's constitutional claims are not barred, as the lawsuit challenges only those harms that were caused by the unconstitutional 1992 capital trial,

20

conviction, and sentencing, none of which was impacted by his 2016 *nolo contendere* plea, and a judgment for Mr. Dennis would not call into question the validity of that plea.  On the merits as well, the claim accrual argument finds no support in the facts or law.

## ARGUMENT

Mr. Dennis's constitutional claims regarding the violations of his rights that caused the 1992 capital trial and conviction are properly rooted in the Fourteenth Amendment.  The Complaint sets forth actionable misconduct by the defendant detectives who fabricated evidence and who deliberately deceived counsel and the court by concealing relevant evidence that would have entirely undermined the prosecution's case.

The defendant detectives' interlocutory appeal rests on the untenable claim that the defendant officers did not violate clearly established rights.  We address the merits of the qualified immunity defense notwithstanding that there is no basis in law to find that the rights asserted were not clearly established, since, under the collateral order doctrine, this Court has jurisdiction to consider whether the Complaint asserts valid constitutional claims and whether these rights were clearly established in 1992.  *See*, *e.g.*, *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016).

The defendant detectives' attempt to bootstrap review of their claims regarding *Heck v. Humphrey*, 512 U.S. 477 (1994), and the claim-accrual doctrine fails, as neither issue is inextricably tied to the central qualified immunity issues. A separate legal issue is only "inextricably intertwined" with a finding of qualified immunity if the facts relating to the defense are also relevant to the core qualified immunity question: whether the officers' conduct was objectively reasonable at the time the conduct occurred. As we argue, there are no such connections here, and, accordingly, the Court may not review the defendant detectives' *Heck* argument. In any event, neither *Heck v. Humphrey* nor the claim-accrual doctrine provides any bar or defense to the constitutional claims, and the defense fails on the merits.

## I.   The Defendant Detectives Violated Mr. Dennis's Clearly Established Right to Due Process of Law Under the Fourteenth Amendment, and, Therefore, They are not Entitled to Qualified Immunity.

The district court properly denied the defendant detectives' qualified immunity defense based on the legally correct finding that the Complaint alleged facts supporting Fourteenth Amendment claims of fabrication and deliberate concealment of evidence. In raising this defense in the district court, the defendant detectives had sought to characterize the Due Process claims of fabrication and concealment of evidence as non-actionable claims under *Brady v. Maryland* and as claims for malicious prosecution.  The district court correctly rejected this

transparent attempt to recast Mr. Dennis's claims and found that this Court and the U.S. Supreme Court had clearly established the rights that Mr. Dennis asserted as of 1992. App. 30.

On this appeal, the defendant detectives relegate the *Brady* doctrine argument to the background, Appellants' Brief at 44-46, and make no further argument that Mr. Dennis's claims should be characterized as advancing a malicious prosecution theory. Instead, they argue—for the first time in this litigation—that the claims should be dismissed on the ground that they assert Fourth, and not Fourteenth, Amendment violations. As we show, the issue has been waived for failure to raise it in the district court. If the Court does reach the issue, it should reject the plainly erroneous argument that *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), requires the claims made by Mr. Dennis to be brought under the Fourth Amendment.

### A. The Defendant Detectives Have Waived the Argument that the Fourth Amendment Controls this Case.

In the district court, the defendant detectives made no argument that *Manuel* or any other authority required that Mr. Dennis bring his claims of fabrication and concealment of evidence under the Fourth Amendment. Based on long settled principles, this argument is waived. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed

upon below."); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 209 (3d Cir. 2010) (citing *Singleton*, 428 U.S. at 120).

In *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014), the defendants argued on appeal that they were not liable for fabricating Halsey's confession because they wrote reports concerning the confession after the prosecutor had filed charges and Halsey's constitutional claims did not cover such conduct. This Court found the argument waived for failure to make it in the district court, stating that the "contentions besides being unpersuasive, come too late." *Id.* The defendants' arguments in *Halsey*, like the *Manuel*-related argument the defendants make in this case, addressed "the first prong of the qualified immunity inquiry—i.e., whether appellees committed a constitutional violation," and were waived because they had "not preserved any contention that they had a defense on that basis." *Id.* (citing *United States v. Dupree,* 617 F.3d 724, 727 (3d Cir. 2010) (discussing the "well-established proposition that arguments not raised in the district courts are waived on appeal")).

Similarly, in *Hicks v. Ferreyra*, 965 F.3d 302, 309-10 (4th Cir. 2020), the court rejected the defendants' efforts to argue for the first time on appeal that the plaintiff had no *Bivens* cause of action available to him. Even though prior decisions had mandated district court consideration of that question, that did not

justify an exception to the principle that "[a]s a general rule, 'the parties' litigation conduct' determines what issues are properly before a court, and a defense may be 'forfeited if the party asserting [it] waits too long to raise the point.'" *Id.* at 310 (quoting *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004)).[1] This was so even though the waived issue addressed the availability of a cause of action in the first instance, because such an issue, as the Supreme Court has expressly held, does not "implicate[] a court's subject-matter jurisdiction." *Id.* (quoting *Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991)).

These long-standing principles of waiver preclude consideration of the defendant detectives' argument that there is no basis for a Fourteenth Amendment violation based on *Manuel* or any other authority.

## B. The Complaint Alleges Clearly Established Due Process Clause Violations.

If the Court decides to reach the issue, it should rule that the holding of *Manuel v. City of Joliet* that claims for an illegal arrest and unlawful pre-trial detention are actionable under the Fourth Amendment has no impact on the claims made by Mr. Dennis. *Manuel* does not address a claim of an unfair trial that leads

---

[1] The *Hicks* court noted that this Court's decision in *Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018), considered on the merits arguments as to the availability of *Bivens* remedies notwithstanding the defendants' waiver. *Hicks*, 965 F.3d at 310 n.3. But, as *Bistrian* emphasized, this was a matter of sound judicial discretion and not an indication that the claim was "non-waivable."

to unlawful imprisonment, and, under controlling authority in this Court, these claims continue to be analyzed under the Due Process Clause. *See Black v. Montgomery Cty.*, 835 F.3d 358, 370 (3d Cir. 2016); *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014); *see also Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004); *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).[2]

*Manuel* does not call into question the long line of Supreme Court cases finding due process violations for the kind of misconduct alleged in this case. *See Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (holding that "a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court" is a violation of due process and "the fundamental conceptions of justice"); *Pyle v. Kansas,* 317 U.S. 213, 216 (1942) (concluding that plaintiff's "allegations that his imprisonment resulted… from the deliberate suppression by [the] authorities of evidence favorable to him" constituted a due process violation).

To the contrary, *Manuel* recognized that incarceration following a trial in which the defendant's rights were violated could be the basis for a claim under the

---

[2] This Court has also held that the Fourth Amendment does *not* apply to post-conviction claims. *See Schneyder v. Smith*, 653 F.3d 313, 321 (3d Cir. 2011) (discussing principle that "*post-conviction* incarceration [is not] a Fourth Amendment seizure") (emphasis in original); *Donahue v. Gavin*, 280 F.3d 371, 382 (3d Cir. 2002) (holding that a plaintiff "is unable to recover damages for post-conviction incarceration based upon any alleged Fourth Amendment violation").

Due Process Clause. *See Manuel*, 137 S. Ct. at 920 n.8 ("[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment.").[3]

This Court's recent ruling in *Delade v. Cargan*, No. 19-1908, 2020 WL 5001788 (3d Cir. Aug. 25, 2020), makes clear that Mr. Dennis's claims properly navigate the dividing line between the Fourth and Fourteenth Amendments. There, the Court held that a claim for unlawful arrest and unlawful detention or restraint *pre-trial, before an appearance before a judicial officer,* states a Fourth Amendment violation. *Id.* at *1.[4] That ruling was a proper application of *Manuel*, and this Court was careful to limit the ruling to pre-judicial appearance violations. The Court did not call into question the well-settled doctrines regarding the Fourteenth Amendment grounds for fabrication and concealment of evidence that

---

[3] The reference to *Villarosa v. N. Coventry Twp.*, 711 Fed. App'x 92, 95 (3d Cir. 2017), Appellants' Brief at 16-17, is also off the mark because the criminal charges were all dismissed before any trial and the case thus only involved a Fourth Amendment pretrial detention issue.

[4] The Court did not address the issue of whether restraint after the initial appearance was also controlled by the Fourth Amendment, *id.* at 4 n.4, but, even if all pre-trial restraints or detention claims arise under the Fourth Amendment, that has no impact on this case as all of the claims made by Mr. Dennis regard violations of his rights that caused an unfair trial and punishment.

lead to an unconstitutional conviction and imprisonment. *See id.* at *3 (citing *Black*, 835 F.3d at 371; *Halsey*, 750 F.3d at 294).[5]

The Complaint alleges that the defendant detectives deliberately deceived Mr. Dennis, his counsel, and the trial court by concealing evidence that showed the failure of an eyewitness to identify Mr. Dennis from a photo array, critical inconsistencies in the testimony of a key prosecution witness, the existence of a witness who had identified an alternative suspect who had confessed to the murder, and a document that corroborated alibi testimony. Mr. Dennis's claim fits squarely within the *Mooney* doctrine and its progeny. *See Haley v. City of Boston*, 657 F.3d 39, 49 (1st Cir. 2011) (holding that a claim of concealment of evidence is actionable under the Due Process Clause).

With respect to Mr. Dennis's claim that the defendant detectives fabricated evidence to implicate Mr. Dennis in the murder—including the clothing falsely claimed to have been recovered in Mr. Dennis's home and a witness coerced into stating that he had seen Mr. Dennis with a gun on the day of the murder—this Court has made clear that when "a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone

---

[5] The fact that *DeLade* compares these due process cases to the earlier decision in *Davenport v. Borough of Homestead*, 870 F.3d 273, 279 (3d Cir. 2017), amplifies the point. *Davenport* involved a claim of excessive force during the course of an arrest, circumstances far afield from the trial-related claims in *Black* and *Halsey*.

Fourteenth Amendment claim under 42 U.S.C. §1983." *Halsey v. Pfeiffer*, 750 F.3d at 294. In recognizing this claim, the Court joined "every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant." *Id.* at 292; *see also Limone v. Condon*, 372 F.3d at 45 (describing long established principle "that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit"); *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (claim for fabricating evidence by coercing a witnesses to provide false testimony stated a violation of the Fourteenth Amendment; the right at issue was "appropriately identified as the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity").

Moreover, *Halsey* ruled that this right was clearly established in 1985, well before the events in Mr. Dennis's case: "Analogous precedent should have informed appellees or any reasonable state actor that, by fabricating evidence for use in a criminal prosecution, a state actor would violate a defendant's constitutional rights." *Halsey*, 750 F.3d at 295; *see also Limone*, 372 F.3d at 45 ("[T]he right not to be framed by law enforcement agents was clearly established in 1967.").

The defendant detectives' argument that claims based on concealment and fabrication of evidence must be brought under *Brady* is also seriously mistaken. First, this assertion contradicts the argument that the Fourth Amendment is the only basis for relief for Mr. Dennis, as *Brady* is a Fourteenth Amendment Due Process claim.

Second, consistent with the principle that misconduct by government officials may violate more than one constitutional provision, there is no bar to a concealment claim under the Fourteenth Amendment. *See, e.g., United States v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993) ("We have rejected the view that the applicability of one constitutional amendment preempts guarantees of another."); *Soldal v. Cook Cty.,* 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than one of the Constitution's commands."); *Halsey*, 750 F.3d at 309 (allowing plaintiff to pursue Fourth Amendment malicious prosecution claim and Fourteenth Amendment fabrication claim with both claims arising out of defendants' creation of false confession).

In *Haley v. City of Boston*, the First Circuit rejected the argument that the type of misconduct alleged in Mr. Dennis's Complaint must be brought as a *Brady* claim, finding that the "[d]eliberate concealment of material evidence by the police, designed to grease the skids for false testimony and encourage wrongful conviction,

unarguably implicates a defendant's due process rights." 657 F.3d at 49. In *Haley*, as here, police concealed significant impeaching evidence and, the court determined, conduct that "deliberately keep[s] the defense in the dark about important evidence" is actionable as a Due Process violation. *Id*. at 50; *see also Drumgold v. Callahan*, 707 F.3d 28, 39 (1st Cir. 2013) ("We have been careful to distinguish between the proscription originating in *Mooney* and *Pyle* against the deliberate suppression of evidence and the more recent affirmative disclosure obligation announced in *Brady*."); *Siehl v. City of Johnstown*, 365 F. Supp. 3d 587, 603 (W.D. Pa. 2019) (citing *Haley*, 657 F.3d at 49) (holding that, notwithstanding reference to *Brady* rights in Complaint, where plaintiff "invoke[d] his due process protections under the Fourteenth Amendment," facts were "sufficient to state a claim pursuant to *Mooney* and its progeny" as "allegations, if true, would constitute a violation of clearly established law that would have been apparent to a reasonable officer in 1991").[6]

The same is true for claims of fabrication of evidence. As this Court has made clear, it is "self-evident that a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" *Halsey*, 750 F.3d at 293 (quoting, *inter*

---

[6]  Mr. Dennis's Complaint does not assert individual liability on a *Brady* theory and the district court properly rejected the effort to recast the claims.

*alia, United States v. Agurs*, 427 U.S. 97, 104 (1976))*; see also Limone,* 372 F.3d at 47 ("To restrict the plaintiffs to a *Brady* claim would require us to disregard the forest and focus single-mindedly on a particular tree."); *Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004) (deliberate or reckless falsification of evidence violates due process); *Spurlock v. Satterfield*, 167 F.3d 995, 1005-06 (6th Cir. 1999) (citing *Pyle* and rejecting qualified immunity defense where officers fabricated evidence).

The district court properly "decline[d] to re-characterize Mr. Dennis's fabrication of evidence and deliberate deception claims simply as a *Brady* claim." App. 30. This decision was correct and, just as this Court should reject the defendant detectives' new attempt to recast the constitutional violations as Fourth Amendment malicious prosecution claims under *Manuel*, the Court should reject the effort to recast the claims as Fourteenth Amendment *Brady* claims.[7] As such, the defendant detectives' qualified immunity defense fails.

---

[7] The defendant detectives do not address the claims of Conspiracy (Count II), Failure to Intervene (Count III), and Supervisory Liability (Count IV), arguing only that the claims fail because there is no underlying constitutional violation. Appellants' Brief at 39-40. As Mr. Dennis has established the Fourteenth Amendment claims, these claims remain in the case.

**II.** **The Issue of Whether *Heck v. Humphrey* Bars this Action is not Within the Court's Jurisdiction; Alternatively, on the Merits, *Heck* Provides no Grounds for Dismissal as the Constitutional Claims Accrued at the Time of the Grant of Habeas Relief.**

The defendant detectives argue that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Mr. Dennis's claims and that this defense can be addressed on this interlocutory appeal. Appellants' Brief at 18-21. They are wrong as to both jurisdiction and the merits. This Court does not have jurisdiction to address the *Heck* defense on this interlocutory appeal as it is not connected, much less "inextricably intertwined," with the issue of qualified immunity. Further, even if the issue was properly raised on this appeal, the claims are not *Heck*-barred.

The Supreme Court has limited appellate jurisdiction on qualified immunity appeals to issues that are "inextricably intertwined" with qualified immunity, *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995), and the courts of appeals have been careful to address only those issues that directly impact the qualified immunity analysis or necessarily resolve the issue. *See, e.g., Estate of Ceballas v. Husk*, 919 F.3d 1204, 1221 (10th Cir. 2019) (finding no jurisdiction over attack on viability of municipal liability claim on ground that resolution of qualified immunity issue would not resolve municipality's liability); *Allman v. Smith*, 790 F.3d 762, 763 (7th Cir. 2015) (rejecting city's argument that claims against it were inextricably

intertwined with individual appeal of city official claiming no clearly established right).

The argument that *Heck* bars Mr. Dennis's claims due to the entry of a *nolo contendere* plea to a reduced charge after successfully overturning his capital conviction is entirely untethered to the issue of whether he states a claim that the defendant detectives violated his clearly established rights to be free from a conviction caused by fabrication and concealment of evidence. The qualified immunity analysis looks only to whether the rights asserted were violated and whether they were clearly established; it has nothing to do with the separate question of whether a later plea or conviction bars the action.

Moreover, an assessment of the *merits* of the *Heck* defense shows that this doctrine addresses an entirely separate issue not at all intertwined with the qualified immunity issue. In *Heck*, the Supreme Court held that a plaintiff may not pursue a §1983 action where a finding in the plaintiff's favor would imply the invalidity of an outstanding conviction or sentence. Therefore, had Mr. Dennis brought claims implying the invalidity of his 2016 *nolo contendere* plea (the only extant conviction), *Heck* would bar the action. But the claims in this case relate only to the 1992 capital conviction. This Court's ruling in 2016 vacated the 1992 conviction, thus paving the way for this § 1983 action. More specifically, as

detailed, *supra* at 5, the claims are targeted at the harms caused *solely* by the 1992 capital trial and conviction, and do not seek any relief that would call into question the validity of his *nolo contendere* plea.

In *Jackson v. Barnes*, 749 F.3d 755, 760 (9th Cir. 2014), a § 1983 plaintiff whose murder conviction was reversed, but who was later retried and convicted, was permitted to bring a damages action alleging Fifth and Sixth Amendment violations concerning the police conduct that caused the initial conviction. The court held that the § 1983 claim was not barred by *Heck* because a judgment in his favor would imply only the invalidity of his first conviction and would have no bearing on the later adjudication of guilt.

In *Poventud*, the plaintiff's initial conviction was vacated on collateral review and he then pleaded guilty to a lesser charge—just as in this case. The court allowed his § 1983 *Brady* claims regarding the initial prosecution to proceed, ruling that *Brady's* materiality prong "does not depend on factual innocence, but rather on what would have been proven absent the violation." *Poventud*, 750 F.3d at 134. In short, a *Brady* claim, like the deception and fabrication claims in this case, was "compatible with the validity of his subsequent conviction." *Id.* at 136; *see also Olsen*, 189 F.3d at 55 (1st Cir. 1999) (Fourteenth Amendment claim against police officers for concealing evidence during plaintiff's prosecution for murder was

actionable even though he later pleaded *nolo contendere* to a lesser charge); *Smith v. Gonzales*, 222 F. 3d 1220, 1222 (10th Cir. 2000) (suit for a *Brady* violation was not *Heck*-barred even if there was a re-trial as the prosecution could not again withhold the exculpatory evidence).

The fact that *Heck* does not bar the claims in this case fully rebuts the defendant officers' argument that *Heck* is "inextricably intertwined" with the qualified immunity issue. In the face of this consistent line of authority, the defendant detectives rely on cases which are inapposite or otherwise not controlling. Appellants' Brief at 19-21. In *Lucier v. City of Ecorse*, 601 Fed. App'x 372, 376-77 (6th Cir. 2015), the plaintiff's challenge was to a conviction that had *not* been overturned on appeal or collateral review. Even in this procedural posture, the court found no *Heck*-bar and denied summary judgment. *Id.*; *see also Cormier v. Lafayette City-Par Consol. Gov't*, 493 Fed. App'x 578, 584-85 (5th Cir. 2012) (as the underlying conviction had not been reversed or otherwise called into question, a § 1983 claim for malicious prosecution was barred).

*Eberhardinger v. City of York*, 782 Fed. App'x 180 (3d Cir. 2019), provides no support for jurisdiction; to the contrary, this Court did not exercise jurisdiction over the *Heck* claim. There, the plaintiff asserted a Fourth Amendment excessive force claim, and, on an interlocutory appeal from a denial of qualified immunity,

this Court found that the right to be free from the use of the alleged force was clearly established and denied immunity. The Court summarily rejected the claim of jurisdiction to hear a *Heck*-bar argument, as it was based on a *nolo contendere* plea by a different party in state court. *Id.* at 183 n.2 [8]

The defendant detectives recognize that where the facts show a "disconnect between an arguable *Heck* bar and qualified immunity, the former is not immediately appealable." Appellants' Brief at 21. And that is precisely the situation in this case as there is neither an arguable *Heck* bar, nor any relationship, much less one inextricably intertwined, between the *Heck* doctrine and the question of whether the defendant detectives could reasonably believe their conduct was not prohibited. Telling as well is the argument asserting that Mr. Dennis seeks to "*de facto* to annul his conviction." Appellants' Brief at 22. As the Complaint makes clear, Mr. Dennis does not seek to "annul" his *nolo contendere* plea, and the purported basis for jurisdiction is non-existent.

The defendant detectives also argue that the *nolo contendere* plea bars any claims relating to the 1992 conviction and sentence on the theory that no claim has

---

[8] In *McAdam v. Warmuskerken*, 517 Fed App'x 437 (6th Cir. 2013), the court rejected the qualified immunity appeal on an excessive force claim and in a two-sentence analysis found no merit to the *Heck* defense. To the extent the Court asserted jurisdiction, it provided no reasoning on the issue of whether the claims were "inextricably intertwined." The same is true for *Miller v. Riser*, 84 Fed. App'x 417 (5th Cir. 2003), and neither of these non-precedential rulings is persuasive, particularly in light of this Court's contrary ruling in *Eberhardinger*.

"accrued." Appellants' Brief at 23-28. The basic flaw in this argument is that it assumes that *Heck* bars any claim for constitutional harms in two-conviction cases, even where the harms caused by the first, vacated conviction are separate and independent from the consequences of the second conviction. We have already shown why this argument fails, and the same reasoning applies whether the issue is viewed directly under *Heck* or through the lens of "accrual" of a claim.

Appellants misconstrue federal law by attempting to merge the "favorable termination" element of a Fourth Amendment malicious prosecution claim (*see, e.g., Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998)) into the Fourteenth Amendment claims raised in this case. Fabrication and deliberate deception claims are, of course, "analogous to malicious prosecution claims" on the issue of the accrual date, s*ee McDonough v. Smith,* 139 S. Ct. 2149, 2159, n.8 (2019), but that is where the comparison ends, as fabrication and deliberate deception claims have no favorable termination element. *See Jackson*, 749 F.3d at 758 (holding that "plaintiff who has been lawfully [re]convicted is not barred by Heck" for suit over *Miranda* violations at first trial); *Poventud*, 750 F.3d at 124-25 (suit not barred when plaintiff pled guilty to lesser charges because "he secured a state court judgment vacating his 1998 conviction, and the State chose not to appeal"); *Olsen*, 189 F.3d at 57 (*nolo* plea to lesser charge for a time-served sentence did not bar suit for non-

"incarceration-related damages"); *Smith*, 222 F.3d at 1222 (claim accrued when conviction was vacated because prosecution could not withhold the same exculpatory evidence on retrial and civil suit would not invalidate "any conviction or sentence that might result from prosecution of the pending charges"). Accordingly, once the 1992 conviction was reversed, the claims made by Mr. Dennis attacking the constitutional violations that gave rise to that conviction accrued.[9]

*Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020), does not support the defendant detectives' accrual theory. Appellants' Brief at 25-26. There, the court ruled that the statute of limitations did not accrue until the plaintiff had received a full pardon from the governor officially vacating the judgment of conviction, as opposed to an earlier grant of commutation that simply provided for his release from custody. The same is true here. If Mr. Dennis had merely been released from custody, without a judicial determination or other governmental action that vacated his 1992 conviction, no constitutional claims would accrue, as *Heck* would continue to be a bar to suit. But once a full pardon, or here, a reversal of the conviction on the basis of constitutional error, has occurred, the claims accrue. As the defendant

---

[9] Additional cases cited by the defendant detectives, Appellants' Brief at 24-25, stand for this proposition as well: all of them ruled that a claim can be brought once there is a reversal or dismissal of criminal charges. And all are the traditional single-trial cases and not from the two-trial context which fully supports Mr. Dennis's claims here.

detectives recognize, Appellants' Brief at 26, the bar to suit in *Savory* remained in place as long as the conviction was "extant." So too, here, Mr. Dennis had no claims until the "extant" conviction was vacated. And since this Court's habeas ruling definitively overturned the conviction on grounds of constitutional error, *that conviction* had terminated favorably for Mr. Dennis. *See McDonough*, 139 S. Ct. at 2154-2155.[10] The fact that he later entered a *nolo* plea to reduced charges did not retroactively bar his claims for harms that are entirely independent from the *nolo contendere* plea and sentence.

Finally, the defendant detectives' reliance on *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005), and *Curry v. Yachera*, 835 F.3d 373 (3d Cir. 2016), is misplaced. *Gilles* stands for the proposition that a claim for malicious prosecution cannot be brought when there was no "favorable termination" of the underlying conviction. Mr. Dennis does not allege a malicious prosecution and, as discussed above, his claims have no such "favorable termination" requirement; in any event, there was a full favorable termination of Mr. Dennis's 1992 conviction. *Curry* is equally inapposite as it was a single conviction case (based on a *nolo contendere* plea) that was still valid at the time of the civil suit for alleged misconduct in the criminal

---

[10] *Smith v. Gonzales*, 222 F.3d 1220 (10th Cir. 2000), is not to the contrary. As recognized by the defendant detectives, Appellants' Brief at 27, the court ruled that where the plaintiff, like Mr. Dennis, obtained habeas relief, the claims accrued as of the time the conviction was vacated. *Smith*, 222 F.3d at 1222.

investigation.  Accordingly, *Heck* was a bar to suit, but only because it would imply the invalidity of the *nolo contendere* plea.  Mr. Dennis does not challenge anything connected to his conviction arising out of his *nolo* plea.

In sum, the *Heck* issue is not connected to the qualified immunity issue, and, therefore, is outside of this Court's jurisdiction.  In the alternative, the Court should affirm the lower court's ruling that there is no *Heck* bar to the constitutional claims made by Mr. Dennis.

## CONCLUSION

For the foregoing reasons, this Court should affirm the rulings of the district court denying qualified immunity and remand the case for further proceedings.

Respectfully submitted,


 *S/ Paul Messing*
Paul Messing
David Rudovsky
KAIRYS, RUDOVSKY, MESSING,
   FEINBERG & LIN
718 Arch Street, Suite 501S
Philadelphia, PA 19106
(215) 925-4400
*Counsel for Appellee*

# CERTIFICATIONS OF COUNSEL

Undersigned counsel certifies as follows:

1.    Undersigned counsel is a member of the bar of the United States Court of Appeals for the Third Circuit. L.A.R. 28.3(d).

2.    This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,886 words.

3.    This Brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in a 14-point Times New Roman font.

4.    A copy of this brief was served on all counsel of record through the Court's Electronic Case Filing System.

5.    The text of the electronic brief is identical to the text in the paper copies to be filed with the Court.  L.A.R. 31.1(c).

6.    A virus check was performed on the PDF file of this brief and no virus was found.


 *S/ Paul Messing*
Paul Messing